UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN W.,<br><br>             Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>             Defendant. | Case No. 20-cv-05157-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 27, 30 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's final decision that Plaintiff was not disabled and was ineligible for benefits for a period of two and a half years.[1] (Administrative Record ("AR") 12-32.)[2] After carefully considering the parties' cross-motions for summary judgment, (Dkt. Nos. 27, 30), the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the ALJ erred in evaluating Plaintiff's symptom testimony, but there are outstanding issues to be resolved before a disability determination can be made, remand for further proceedings is proper.

**BACKGROUND**

**A.    Procedural History**

On January 10, 2009, Plaintiff was found disabled as of June 28, 2008 based on end stage

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5, 10.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

liver disease under medical listing 5.05. (AR 19, 81.) This determination is known as the comparison point decision ("CPD"). (*See* AR 19.) In a continuing disability review on January 24, 2017, the Social Security Agency determined that Plaintiff was no longer disabled. (AR 17, 94, 104.) The state agency disability hearing office upheld the determination with an amended date of January 1, 2017. (AR 98, 120-30.) Subsequently, an Administrative Law Judge ("ALJ") held a hearing on April 5, 2019 and issued a partially favorable decision. (AR 12, 17.) The ALJ determined that Plaintiff's disability ended on January 1, 2017 but that she became disabled again on May 26, 2019 when she became an individual of advanced age. (AR 17-25.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the time of the CPD. (AR 19.) At step two, the ALJ found that, since January 1, 2017, Plaintiff had the following severe medically determinable impairments: history of liver cirrhosis, portal hypertensive gastropathy, gastric antral vascular ectasias, type 2 diabetes mellitus, hepatic encephalopathy, and status post open reduction and internal fixation ("ORIF") at the right wrist. (AR 19.) None of the impairments, alone or in combination, met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19.) At step three, the ALJ found that medical improvement had occurred such that by January 1, 2017, Plaintiff's end stage liver disease no longer met or medically equaled the listing that was met at the time of the CPD. (AR 19.) Specifically, the ALJ determined that medical improvement had occurred because Plaintiff "had been taken off the liver transplant list, "stopped following with the liver clinic," "was following a healthy lifestyle with regular exercise and a good diet," and "was doing well." (AR 19.) At step four, the ALJ found that the medical improvement was related to the ability to work. (AR 19.) At step six, the ALJ determined that Plaintiff's combined impairments more than minimally affected her ability to perform basic work activities. (AR 19.) At step seven, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with limitations but was unable to perform her past relevant work. (AR 20-23.) At step eight, the ALJ found that Plaintiff became an individual of advanced age on May 26, 2019; had at least a high school education; and was able to communicate in English. (AR 23-24.) The ALJ concluded that, between January 1, 2017 and May 26, 2019, Plaintiff could have performed jobs that existed in

significant numbers in the national economy and was not disabled. (AR 24-25.) The ALJ also concluded that, as of May 26, 2019, Plaintiff cannot perform any jobs that exist in significant numbers in the national economy and is disabled. (AR 25.)

Plaintiff requested review by the Appeals Council, which was denied. (AR 1.) Thus, Plaintiff seeks review in this Court as to the determination that she was not disabled between January 1, 2017 and May 26, 2019. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 27, 30.)

**B.     Issues for Review**

While Plaintiff states that one of the issues on review is "whether the ALJ's analytical errors deprive[d] the [vocational expert] testimony of evidentiary value," (Dkt. No. 27 at 1), nowhere in her motion does she explain this issue. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (explaining role of vocational expert testimony in RFC analysis). Similarly, there is no clear basis for Plaintiff's argument that the ALJ erred in failing to consider the combined impact of severe and non-severe impairments. (Dkt. No. 27 at 10.) The ALJ determined that all of Plaintiff's impairments were severe, (AR 19), and Plaintiff does not assert any other specific impairments. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (noting that if ALJ determines that claimant has a severe medically determinable impairment, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis").

Accordingly, the Court reviews the following issues:

1. Is the ALJ's RFC finding supported by substantial evidence?
   a. Did the ALJ err in evaluating the medical evidence?
   b. Did the ALJ err in evaluating Plaintiff's symptom testimony?
   c. Did the ALJ err in evaluating third party statements?
2. Should the Court remand for payment of benefits or further proceedings?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

After a claimant is determined entitled to disability benefits, the Social Security Agency is required to periodically review whether entitlement to such benefits continues. 42 U.S.C. § 421(i); 20 C.F.R. §§ 404.1589-1590. A claimant's benefits cannot be terminated unless substantial evidence demonstrates medical improvement in her impairment such that the claimant is able to engage in substantial gainful activity and is therefore no longer disabled. *See* 42 U.S.C. § 423(f)(1); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th. Cir. 1995). To determine whether the claimant continues to be disabled, the ALJ conducts an eight-step sequential analysis, examining: (1) whether the claimant has engaged in "substantial gainful activity" since the CPD; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that "meets or equals" one of the listings in the regulations; (3) whether "medical improvement" has occurred; (4) whether the medical improvement has increased the claimant's capacity to perform basic work activities; (5) whether an exception to medical improvement applies; (6) whether the claimant's current combined impairments significantly limit her ability to perform basic work activities, rendering them "severe"; (7) whether, given the claimant's RFC, she can still do her "past relevant work"; and (8) whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1594(f). The analysis proceeds sequentially except that if (3) is not met, then the analysis skips to (5), and if (4) is met, then the analysis skips to (6). *Id.* § 404.1594(f)(3)-(4).

## DISCUSSION

I.  **The ALJ's RFC Finding**

At step seven, to determine Plaintiff's RFC "the ALJ must consider whether the aggregate of [her] mental and physical impairments may so incapacitate [her] that [she] is unable to perform

4

1  available work." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). The ALJ will
2  consider all evidence in the claimant's case record when making a disability determination. 20
3  C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). "The ALJ is responsible for studying the record and
4  resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir.
5  2017). Courts affirm the RFC determination if the ALJ applied the proper legal standard and the
6  decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.
7  2005). Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, Plaintiff's
8  symptom testimony, and third party statements.

### A.  Medical Evidence

In assessing medical opinion evidence, Ninth Circuit courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non[-]examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (citation omitted). "[I]f the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (cleaned up). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31.

In determining Plaintiff's RFC, the ALJ gave the opinion of Dr. Tanaka (a non-examining physician) the greatest weight; that of Dr. Dipsia (a non-examining physician) partial weight; and that of Dr. Cataldo (a treating physician) little weight. (AR 21-22.) Dr. Tanaka assessed Plaintiff as able to perform light work with limitations; Dr. Dipsia assessed Plaintiff as able to perform

light work without limitations; and Dr. Cataldo assessed Plaintiff as unable to work. (AR 21.) Dr. Cataldo opined that Plaintiff's condition is "permanent" and she is "at severe risk of decompensated liver disease and need for liver transplant if she is unable to continue her complex medication regimen." (AR 840.) "If [Plaintiff] were forced to work full time she would be limited by fatigue, frequent bathroom breaks because of medication side effects, [and] frequent naps. She can have unexpected issues from hepatic encephalopathy (confusion, delirium)." (AR 841.) Because the doctors' opinions are contradictory, the ALJ was required to provide "specific and legitimate reasons," "supported by substantial evidence," for rejecting one or more of the opinions. *Ford*, 950 F.3d at 1154 (cleaned up).

The ALJ gave Dr. Cataldo's opinion little weight because it is "not well-supported by the doctor's own treatment notes, showing that the claimant was generally doing well and maintaining a healthy lifestyle, that she had generally normal findings upon physical examinations, and that her conditions were generally stable with conservative treatment." (AR 22.) Inconsistency with the doctor's own treatment notes is a specific and legitimate reason to reject the doctor's opinion or afford it little weight. *See Ford*, 950 F.3d at 1154. The ALJ's conclusion as to Dr. Cataldo's opinion is supported by substantial evidence in the record. *See id.*

Dr. Cataldo began treating Plaintiff in 2015 and provided an opinion in March 2019. (AR 22, 840.) Initially, Plaintiff's liver disease was a major concern. (AR 644, 655.) By 2017, Dr. Cataldo's treatment notes indicate that Plaintiff's liver disease was stable and she was managing her diabetes with a healthy lifestyle. For example, in January 2017:

> [C]irrhosis. Remotely she was decompensated but has done well for years. She previously followed with the liver clinic and previously was on the transplant list but was taken off of that since she's done so well. She's no longer following with the liver clinic, but will be referred back if she has any decompensation[.]

(AR 622; *see* AR 622 (Jan. 2017: "maintaining an excellent healthy lifestyle, with regular gym routines regular walking and healthy diet"), 826 (Sept. 2017: "We talked about her disability. Her medical problems [are] certainly stabilized but she [is] still dealing with chronic complex medical issues."), 831 (Sept. 2017: "Cirrhosis . . . has stabilized but is still requiring numerous medications with side effects."), 825 (Dec. 2017: "cirrhosis that stabilized[,] overall doing well"), 815 (June

6

2018: "Follows with liver clinic. . . . History of decompensation in 2010. . . . Tendency towards brittle diabetes but with very good diet she [has] kept her numbers excellent and we have had to actually stress[] to her being less aggressive and preventing hypoglycemia.").) It is true that Dr. Cataldo consistently opined that Plaintiff required disability benefits. (AR 623 (Jan. 2017: "[R]egarding her ongoing disability. . . . It's because of her cirrhosis and complications of her medications including weakness fatigue dizziness diarrhea polyuria. In addition she requires stability to maintain her health to prevent relapse of decompensated liver disease[.]"), 831 (Sept. 2017: "I do support her permanent total disability as reviewed above"), 840 (Mar. 2019).) But there is substantial evidence—"more than a mere scintilla"—that the opinion was inconsistent with his treatment notes. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *see Ford*, 950 F.3d at 1154; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[The doctor's notes] are not the sort of description and recommendations one would expect to accompany a finding that [claimant] was totally disabled under the Act."). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018) (cleaned up). The ALJ's interpretation that Dr. Cataldo's opinion was inconsistent with his treatment notes satisfies the substantial evidence standard. (AR 21-23.)

Accordingly, the ALJ did not err in assessing the medical opinion evidence.

### B. Plaintiff's Symptom Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted).

Here, applying the two-step analysis, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms": "weakness, confusion, nausea, fatigue, right arm pain, stress, headaches, and stomach pain." (AR 21; *see* AR 51-53, 56-61 (Plaintiff's testimony).) Because Plaintiff met the first part of the test, and the ALJ pointed to no evidence of malingering, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms. *Lingenfelter*, 504 F.3d at 1036.

The ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (AR 21.) This boilerplate conclusion is not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958; *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[T]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." (cleaned up)).

To the extent that "the reasons explained in this decision," (AR 21), refers to the medical evidence discussed elsewhere in the ALJ's decision, the medical evidence does not provide a specific, clear, and convincing reason to reject Plaintiff's testimony. *See Rollins*, 261 F.3d at 856–57. The medical evidence substantially corroborates Plaintiff's symptom testimony as to "weakness, confusion, nausea, fatigue, right arm pain, stress, headaches, and stomach pain." (AR 21; *see* AR 623 (Jan. 2017: "Chronic pain. Right wrist related to previous fracture and ORIF."), 623 (Feb. 2017: "complications of her medications including weakness fatigue dizziness diarrhea polyuria"), 826 (Sept. 2017: "She still has some epigastric discomfort and early satiety symptoms. . . . She has chronic memory problems. They are not severe and she can take care of her basic needs."), 807 (June 2018: "Her biggest concern is reflux. Long-standing reflux. . . . She is very bothered by her right hand pain. It is really a pain at the wrist[,] it can be a chronic ache exacerbated with movement or touching . . . ."), 798 (Aug. 2018: "long-standing wrist pain after previous fracture"), 792 (Oct. 2018: "She is here for follow-up of numerous chronic issues and to talk about her right wrist pain. She gets shooting pains with use and motion . . . and it is not very

8

tolerable."), 787 (Jan. 2019: "She presents today for further evaluation of her R wrist. She experiences shooting pains down her whole forearm . . . . [S]he's dropped objects due to pain and weakness.").) Moreover, Defendant's arguments about conservative treatment are unpersuasive because many of Plaintiff's symptoms were side effects of her liver disease and diabetes treatments. (*See* AR 623.) Thus, whether or not those treatments were conservative, they had well-documented effects in producing her asserted symptoms.

Accordingly, the ALJ did not provide "specific, clear and convincing" reasons to reject Plaintiff's testimony regarding the severity of her symptoms. *Lingenfelter*, 504 F.3d at 1036.

### C. Third Party Statements

Plaintiff argues that the ALJ erred by not considering the third-party function report submitted by her husband. The report was submitted in October 2008 as part of Plaintiff's initial disability determination, the CPD. (AR 259.) Because the RFC analysis focuses on the claimant's "current" impairments, 20 C.F.R. § 416.994(b)(5)(vi), the ALJ was not required to consider the third-party function report that had already been considered in the CPD. *Cf. Greger*, 464 F.3d at 972 (explaining that ALJ must consider lay witness testimony). Accordingly, there was no error.

\* \* \*

Substantial evidence supports the ALJ's assessment of the medical evidence. Similarly, the ALJ was not required to consider the third-party function report identified by Plaintiff. However, the ALJ erred in failing to provide specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony. Because the ALJ's adverse credibility finding as to the intensity, persistence, and limiting effects of Plaintiff's symptoms is not supported by substantial evidence, the decision cannot stand. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008). The ALJ's errors here go to the heart of the disability determination and are not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned . . . ." (cleaned up)).

## II. Remand for Payment of Benefits or Further Proceedings

Plaintiff asks the Court to remand the case for the payment of benefits, or alternatively, for

further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th. Cir. 2004) (citations omitted). A remand for award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th. Cir. 2017) (citation omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made, given the Court's conclusion that the ALJ erred by failing to provide specific, clear and convincing reasons to discredit Plaintiff's symptom testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave no legally sufficient reason for discrediting Plaintiff's testimony. The third prong, however, is not satisfied. It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited, because the ALJ would need to first analyze whether Plaintiff's symptom testimony compels a different RFC finding. Thus, on remand, in addition to properly considering Plaintiff's testimony, the ALJ must revisit the RFC finding in light of that testimony.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion, and REMANDS to the Commissioner of Social Security for further proceedings consistent with this Order.

This Order disposes of Docket Nos. 27, 30.

**IT IS SO ORDERED.**

Dated: March 10, 2022

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

10